United States District Court

District of Connecticut

James A. Harnage
Inmate #148472
Corrigan CI
986 Norwich - New London TPK
Uncasville, CT. 06382

Civil No.:

Date: 10/3/16

vs

Janine Brennan
986 Norwich - New London Tpk.
Uncasville, CT. 06382

Dr. Wu, individually and for Correctional Managed HealthCare
263 Farmington Ave.
Farmington, CT. 06030

Nurse Laura
986 Norwich - New London Tpk.
Uncasville, CT. 06382

Jane Does 1-5
986 Norwich - New London Tpk.
Uncasville, CT. 06382

## A Complaint In Damages

Plaintiff:

1. At all times herein mentioned the plaintiff, James A. Harnage (Harnage) is and was an Inmate incarcerated within and for the State of Connecticut (the state) in the custody and care of the Department of Correction (DOC), being housed at the Corrigan Correctional Institute (Corrigan).

Defendants:

2. At all times herein mentioned the defendant Janine Brennan (Brennan), is and was a Nurse at Corrigan performing duties as a Health Services Review Coordinator for Correctional Managed HealthCare (CMHC), and sued herein in an individual capacity.

3. At all times herein mentioned the defendant, Dr. Wu (Wu) is and was the director of Medical Services and Administrator for Correctional Managed Healthcare (CMHC) providing medical services to Inmates at Corrigan, sued in an individual capacity.

4. At all times herein mentioned the defendant Correctional Managed Healthcare (CMHC), is and was a division of the University of Connecticut (UCONN) Medical Services contracted to provide medical services to inmates incarcerated within the DOC.

5. At all times herein mentioned the defendant, Nurse Laura (Laura) is and was a medical staff member providing medical services to Inmates at Corrigan, and is sued herein in an individual capacity.

6. At all times herein mentioned Jane Doe 1 (Doe 1) is and was an unknown doctor providing medical services to inmates at Corrigan and is sued herein in an individual capacity.

7. At all times herein mentioned Jane Does 2-5 (Does 2-5) are and were medical staff members providing medical services to Inmates at Corrigan and are sued herein in an individual capacity.

Count One:

1-8 Paragraphs numbering 1-7 of the foregoing are incorporated here by reference as if set forth at length and made a part hereof this the First Count.

9. On or about July 28, 2016, plaintiff was transferred from the MacDougall Correctional Institute to Corrigan.

10. The plaintiff, since his incarceration has repeatedly been prescribed medications to treat chronic ailments.

2

11. These prescriptions include, but may not be limited to:

a) Ibuprofen, required to treat pain and inflammation in his dominant hand, right hip and lower back resulting from a fall prior to incarceration, and

b) Gabapentin, for plaintiffs diabetic neuropathy, and;

c) Flunisolide / Flonase, for serious sinus congestion, and;

d) Dulcolax, for chronic constipation, and;

e) Psyllium fiber (metamucil), for regularity in bowel movement and control, and;

f) TUMS and Prilosec for ulcers, and

g) eyedrops for dry eyes (Artificial Tears), and

h) clobetasol propionate, for scalp psoriasis.

12. The denial of these prescriptions causes the plaintiff significant pain and needless suffering.

13. In the instance of the Dulcolax and Metamucil, the past denial of these items caused the plaintiff to undergo necessary hemorrhoid and hernia surgeries.

14. Denial of plaintiffs Ibuprofen causes his dominant hand to swell and become immobilized and causes great pain in plaintiffs hip and lower back.

15. Denial of plaintiffs Gabapentin causes great pain and burning sensations in the plaintiffs feet making walking extremely difficult.

16. Denial of plaintiffs Flonase / Flunisolide causes the plaintiffs congestion leaving plaintiff to feel like he is choking and gasping for air.

17. Defendant Wu, in an attempt to save money, has instituted a policy instructing staff to minimize costs by any means including the unreasonable and arbitrary elimination of mid-day doses of necessary medications, reducing plaintiff from 3 times per day down to 2 times per day without any care or concern for the

adverse affects on inmates, like Harnage.

18. Who has authorized and commanded that medications be only prescribed at one-half the manofactures recommended minimum dosage.

19. Upon plaintiffs arrival at Corrigan the defendants, in a conspiracy one with the other, began and did, interfere with the refill and renewal of many of the plaintiffs needed prescriptions.

20. Defendants arbitrarily reduced plaintiffs Ibuprofen from 3 times per day down to 2 times per day, without medical cause or examination or testing of the plaintiff, solely in consideration of WO's arbitrary policy to eliminate 3 time per day medications.

21. Plaintiff suffers significant and needless pain without his Ibuprofen, the elimination of which causes swelling of plaintiffs dominant hand to the point of immobilization and extreme pain in plaintiffs right hip and lower back.

22. As plaintiff is indigent he cannot provide these medications to treat his chronic condition.

23. Plaintiff has been prescribed the Dulcolax and Metamucil for chronic constipation.

24. Each of the defendants have met with the plaintiff at sick call, except Doe 1, for the renewal of plaintiffs medications, and despite being told of plaintiffs condition have failed or refused to renew same without even reviewing plaintiffs medical history, examining the plaintiff or considering plaintiffs need for the prescription.

25. Without proper management of plaintiffs chronic constipation the plaintiff was previously subjected to as many as 4 surgical procedures.

26. Defendants have refused for more than 2 months, to provide plaintiff proper management and have again caused the plaintiff to remain constipated

4

for as many as 4-6 days at a time and has caused the beginnings of yet another hemorrhoid that, unless treated quickly, may require another surgical correction.

27. The thoughts of a risk of yet another surgical procedure has caused the plaintiff extreme stress and anxiety leading to migraine headaches and nauseous upset stomach.

28. The plaintiffs prescription for Flunisolide was arbitrarily eliminated by WV. for economic gain rather than plaintiffs medical well being.

29. Plaintiff was instead changed to Flonase a nasal spray that causes plaintiff sinus irritation and bleeding.

30. Despite repeated complaints defendants have refused to examine plaintiff or change him back to the Flunisolide.

31. Defendants have attempted to prescribe the Flonase at half the manufacturers recommended dose ordering 1 spray per nostril one time a day.

32. One spray per day does NOT provide any relief for the plaintiffs congestion, however, 2 sprays per nostril, which is recommended by the manufacturer as the minimum dosage; does provide relief.

33. However, defendants limit of once per day usage does not provide 24 hour relief.

34. The manufacturers recommended 2 dosages per day does provide 24 hour a day relief, if not for the irritation and bleeding

35. The Flunisolide, which comes in a plastic rather than glass dispenser bottle

5

was allowed to be kept on person by the plaintiff in his cell, for as needed usage.

36. The defendants are attempting to save money by treating all inmates the same by assuming a position that every individual, like Harnage, may be treated with the same medication at the same dosage level.

37. Plaintiff believes and thereby alleges the defendants actions are designed to save money, for personal monetary gains; without consideration for the plaintiffs physical and mental well being.

38. Without any hour relief from plaintiff's sinus congestion, he is left suffering, unable to breath and gasping for air with the pressure brill up in the back of his sinus cavity, into his throat, that feels like he is choking.

39. Other medication denials are solely for staff convenience.

40. Plaintiff Gabapentin is taken to control his diabetic neuropathy.

41. The Gabapentin was prescribed for 3 times a day at 1200 mg per dosage.

42. To eliminate the need for a mid-day dosage, that needed to be dispensed at med-line, defendants split the mid-day dose and increased the morning and evening dose alleging that giving the plaintiff the same 3600 mg a day meant he would receive the same relief, which it does not.

43. The manufacturers maximum recommended dosage is 1200 mg per dose 3 times a day.

44. The defendants have failed to consider any adverse health affects to the plaintiff, as may have been identified by the manufacturer during testing, in setting its maximum dosage limit; at least one of which includes drastic weight gain.

6

46. Defendants concerns focus solely on staff convenience and economic savings.

47. On October 1, Brennan refused to listen to Harnage regarding his medication issues attempting solely to justify an unreasonable practice.

48. Even something as simple as informing defendants that although the Flonase irritates his nasal passage, the one spray per nostril does not alleviate plaintiffs congestion and requires at a minimum of 2 sprays per nostril to have any therapeutic affect.

49. As plaintiff knows this, at med-line, he uses 2 sprays per nostril to achieve the necessary relief, despite attempts by staff to limit him to one spray.

50. Plaintiff has repeatedly informed staff that he used one spray for some time after initially being switched from Flunisolide to Flonase at MacDougall and not only did the one spray not work, it still caused sinus irritation.

51. Defendants have refused to even hear plaintiffs concerns for his medical concerns and now attempt to insist that plaintiffs irritation is caused by the 2 sprays per nostril, when it does not, without listening to what plaintiff knows about his own body.

52. Defendants are simply looking for ready made excuses to limit medication usage to save money.

53. On multiple occasions, since plaintiffs transfer to Corrigan, Harnage was seen at sick call by Laura.

54. In attempting to explain to Laura that his Flunisolide and Flonase were discontinued by Dr. Naqvi at MacDougall, after he learned plaintiff named him in a legal action, Laura became irate and dismissed Harnage refusing to correct

7

his medications renewal and refills.

55. Plaintiff believes and thereby alleges it was immediately following this first incident that Harnages Ibuprofen changed from 3 times a day to 2 times a day.

56. Despite numerous requests to see the doctor, concerning his medications and the bleeding in his nose, Poe 1 has still not seen Harnage.

57. Rather than correcting the problems with plaintiffs medications the defendants have retaliated against plaintiff for seeking their correction.

58. On October 3, 2016, Laura, at morning med-line, threatened to discontinue the plaintiffs Flonase for taking the necessary 2 sprays per nostril.

58. Defendants have refused to treat the plaintiffs scalp psoriasis by renewing his Clobetasol Propionate.

60. The plaque psoriasis on plaintiffs scalp causes severe itching, pain and discomfort that spreads to the plaintiffs ears and down to his chin and burns every time the plaintiff showers.

61. The defendants actions or lack thereof constitutes as deliberate indifference to plaintiffs serious medical needs.

62. On October 1, 2016, Brennan told Harnage that no Judge can order the doctor to prescribed any medications.

63. Defendants knew or should have known that their actions or lack thereof would cause plaintiff harm and injury.

64. Plaintiff was harmed and injured as herein described.

8

65. Therefore, plaintiff prays this court grant the following relief:

a) Compensatory damages of $150,000 ♔

b) Punitive damages of $150,000 ♔

c) Injunctive relief commanding defendants to provide plaintiff necessary medical care and uninterrupted delivery of his medications consistent with his medical history.

d) Costs and Attorney Fees.

e) Such other relief as this court deems Just and equitable.

## Legal Claims

66. The defendants deliberate indifference to plaintiffs serious medical needs constitutes as Cruel and Unusual punishment in violation of the Eighth Amendment to the United States Constitution and excessive punishment in violation of Article First, section 8 of the State of Connecticut Constitution.

67. Defendants retaliation against plaintiff for filing legal actions and grievances constitutes a violation of plaintiffs right to Freedom of Speech and right to Petition for redress of grievances, and access to the courts in violation of the First and Seventh Amendments to the United States Constitution and Article First, sections 4, 5, 10, and 14

## Statement Of Past Actions

68. The plaintiff has brought past actions regarding his medical care but has Not brought any actions regarding the events alleges herein against these defendants, however, Dr. Wu is named In plaintiffs other litigations.

9

## Jurisdiction

69. This action is brought to remedy the deprivation, under color of state law, of the plaintiffs rights guaranteed by the First, Eighth and Fourteenth Amendments to the United States Constitution; Article First, Sections 4, 5, 8 and 10 of the State of Connecticut Constitution, and State and Federal Statutory rights. The court has Jurisdiction pursuant to 42 U.S.C. § 1883, 1885 and 1986 and 28 U.S.C. § 1343 (a)(3).

## Previously Dismissed Actions or Appeals.

70. The plaintiff has not brought any actions that were dismissed as frivolous, malicious or for failure to state a claim upon which relief may be granted.

## Jury Demand

71. Plaintiff wishes to have a Jury trial.

## Declaration Under Penalty of Perjury

72. I hereby declare under penalty of perjury that I am the plaintiff in the above action, that I have read the above complaint and that the information therein is true and accurate to the best of my knowledge and belief and to those alleged upon information and belief I believe them to be true and accurate. I understand that if I lie in this complaint I could be prosecuted for perjury and punished with as much as Five (5) years in prison and/or fined up to $250,000.00. I therefore set forth my hand this the 3rd day of October, 2016.

Executed at Uncasville, Connecticut

By _____

James A. Harnage #149472
286 Norwich~NewLondon Tpk.
Uncasville, CT 06382