------------------------------x
                              :
JAMES A. HARNAGE              :     Civ. No. 3:16CV01659(AWT)
                              :
v.                            :
                              :
JANINE BRENNAN, <u>et al.</u>       :     August 30, 2018
                              :
------------------------------x

## <u>RULING ON PENDING MOTIONS</u>

Self-represented plaintiff James A. Harnage ("plaintiff")
has filed two motions to compel, seeking orders compelling
defendants Janine Brennan, Dr. Wu, and Nurse Laura (collectively
the "defendants") to respond to plaintiff's first and second
requests for production (collectively the "motions to compel").
[Docs. #51, #53]. Plaintiff also requests that the Court impose
monetary sanctions as a result of defendants' failure to respond
to his written discovery requests. <u>See generally</u> <u>id.</u> On May 24,
2018, Judge Alvin W. Thompson referred the motions to compel to
the undersigned. [Doc. #55]. On June 16, 2018, defendants filed
an objection to the motions to compel [Doc. #59], to which
plaintiff filed a "Rebuttal" on June 21, 2018 [Docs. #64, #65].
For the reasons set forth below, the Court **GRANTS, in part, and
DENIES, in part**, plaintiff's motions to compel [**Docs. #51, #53**].

## I.  **Background**

Plaintiff brings this action pursuant to 42 U.S.C. §1983. See generally Doc. #1, Complaint. Plaintiff alleges that on or about July 29, 2016, he was transferred from the MacDougall Correctional Institute ("MacDougall") to the Corrigan Correctional Institute ("Corrigan"). Id. at ¶9. Plaintiff alleges that "[a]t all times herein mentioned" he was housed at Corrigan. See id. at ¶1.

Plaintiff alleges that during his incarceration he has been prescribed a litany of medications to treat his many ailments. See id. at ¶¶10-11. Plaintiff alleges that the denial of those medications causes him "significant pain and needless suffering." Id. at ¶12. In particular, plaintiff alleges:

> Dr. Wu, in an attempt to save money, has instituted a policy instructing staff to minimize costs by any means including the unreasonable and arbitrary elimination of mid-day doses of necessary medications, reducing plaintiff from 3 times per day down to 2 times per day without any care or concern for the adverse effects on inmates, like Harnage.

Id. at ¶17. Plaintiff further alleges that upon his arrival at Corrigan, each of the defendants "in a conspiracy [illegible] with the other, began and did, interfere with the refill and renewal of many of the plaintiffs needed prescriptions." Id. at ¶19 (sic). Judge Alvin W. Thompson has construed plaintiff's complaint as bringing an action for deliberate indifference to medical needs in violation of the Eighth Amendment to the United

States Constitution. <u>See</u> Doc. #7, Initial Review Order.[1]

Plaintiff was transferred back to MacDougall in June 2017.[2] The

allegations of plaintiff's complaint relate solely to his

confinement at Corrigan, although plaintiff has filed another

lawsuit with similar allegations directed to the time he has

spent incarcerated at MacDougall. <u>See</u> <u>Harnage v. Wu</u>, No.

16CV1543(AWT) (D. Conn. Sept. 13, 2016) (hereinafter referred to

"<u>Harnage I</u>").

## II.  <u>Motions to Compel [Docs. #51, #53]</u>

Plaintiff has filed two motions to compel. The first seeks

to compel responses to plaintiff's second request for production

directed to defendant Brennan, to which plaintiff has received

no response. <u>See</u> Doc. #51. The second seeks to compel responses

to plaintiff's first request for production directed to

defendants Brennan, Dr. Wu, and Nurse Laura, to which plaintiff

has also received no response. <u>See</u> Doc. #53. The discovery

requests at issue were respectively served on December 22, 2017,

---

[1] Plaintiff also appears to assert a retaliation claim against
defendants Brennan and Nurse Laura. The undersigned makes no
determination here as to whether that claim remains viable in
light of the Initial Review Order.

[2] On June 19, 2017, plaintiff filed a "Notice Re: Change of
Address", bearing the date of June 15, 2017. Doc. #24. That
document states that plaintiff's address had changed to
MacDougall Correctional Institute. <u>See</u> <u>id.</u> Accordingly, the
Court presumes that plaintiff was transferred to MacDougall
sometime in June 2017.

and April 12, 2017. <u>See</u> Doc. #51-2 at 4; Doc. #53-2 at 9. At the time the requests were served, discovery was scheduled to close on February 9, 2018. <u>See</u> Doc. #40. Thus, the requests at issue were timely served.

### A. Legal Standard

Rule 26(b)(1) of the Federal Rules of Civil Procedure sets forth the scope and limitations of permissible discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). "[T]he burden of demonstrating relevance is on the party seeking discovery[.]" <u>Mason Tenders Dist. Council of Greater New York v. Phase Constr. Servs., Inc.</u>, 318 F.R.D. 28, 36 (S.D.N.Y. 2016). Once the party seeking discovery has demonstrated relevance, the burden then shifts to "[t]he party resisting discovery ... [to] show[] why discovery should be denied." <u>Cole v. Towers Perrin Forster & Crosby</u>, 256 F.R.D. 79, 80 (D. Conn. 2009) (alterations added).

### B. Timeliness of Motions

In response to plaintiff's motions, defendants contend that each motion is untimely and that "alone constitutes sufficient

cause to deny them." Doc. #59 at 1. Defendants also concede, however, that they "have not responded to the individual production requests in this case," but have "provided plaintiff with vast production [in plaintiff's other cases]." Id. at 2.

Defendants are correct that plaintiff's motions may be deemed untimely as they were filed after the close of discovery. "Though Rule 37 does not establish time limits for such a motion, a party seeking to file a motion to compel after discovery has closed must ... establish good cause." Gucci Am., Inc. v. Guess?, Inc., 790 F. Supp. 2d 136, 139 (S.D.N.Y. 2011); accord Casagrande v. Norm Bloom & Son, LLC, No. 3:11CV1918(CSH), 2014 WL 5817562, at *2 (D. Conn. Nov. 10, 2014). Plaintiff responds that he "has not waived his right to discovery or the enforcement motions therewith" and that he "has done the best he can, within the confines of his confinement, to meet his obligations to prosecute this action." Doc. #64 at 1. Generally, plaintiff fails to offer good cause for the Court to consider his motions to compel at this late stage. Thus, the Court could simply deny plaintiff's motions as untimely. See, e.g., Richardson v. City of New York, 326 F. App'x 580, 582 (2d Cir. 2009) ("[T]he district court did not abuse its discretion in denying Plaintiff's motion to compel discovery, which was filed over one month after the close of discovery, as untimely."); James v. United States, No. 99CV4238(BSJ)(HBP),

2003 WL 22149524, at *6 (S.D.N.Y. Sept. 17, 2003) (denying motion to compel as untimely where it was filed six months after the close of discovery and the movant proffered no justification for the untimeliness). However, in recognition of plaintiff's self-represented status, the Court will review the substance of plaintiff's motions, particularly in light of the concession that defendants have not responded <u>at</u> <u>all</u> to plaintiff's requests for production in this action. <u>See</u> Doc. #59 at 2.

### C. Production in Plaintiff's Other Federal Lawsuits

Defendants represent that in <u>Harnage I</u>, "Plaintiff has been provided copies of his medical chart" and further assert that plaintiff will be "provided with a variety of other records regarding his medical care[,]" including "copies of electronic medical records, records from UConn Health Center, and URC records." Doc. #59 at 2-3. Plaintiff concedes that his "medical cases are inter-related[,]" but contends that he requires "a set of copies of a majority of the documents for use as exhibits in each separate action." Doc. #64 at 2.

The Court will not require defendants to reproduce the discovery already produced in <u>Harnage I</u> that is also responsive to the requests for production now at issue. Requiring defendants to reproduce thousands of pages of documents does not comply with the spirit, or the letter, of the Federal Rules of Civil Procedure. Indeed, as the very first Rule instructs:

"These rules ... should be construed, administered and employed by the Court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Requiring defendants to reproduce such vast quantities of documents does not promote the speedy or inexpensive determination of this proceeding. Accordingly, rather than reproduce any responsive documents, defendants may respond to plaintiff's written discovery requests by pointing plaintiff to the Bates numbers of the prior production which is responsive to the requests below. To the extent that the timeframe here differs from the documents produced in Harnage I, then defendants shall also produce any responsive documents for that time period, as ordered below.

Plaintiff also contends that defendants should produce a separate set of documents in this action because of his anticipated need for trial exhibits and his limited ability to make copies at his correctional facility. See Doc. #64 at 2. Essentially, by demanding that defendants reproduce all responsive documents, plaintiff asks defendants to bear the cost of producing copies of the production. "Under federal law, the party responsible for production generally bears the cost. Reproduction is not necessarily required, however. A party need only make requested documents available for inspection and copying; it need not pay copying costs." Clever View

Investments, Ltd. v. Oshatz, 233 F.R.D. 393, 394 (S.D.N.Y. 2006) (internal quotation marks and citations omitted); See also 7 James Wm. Moore et al, Moore's Federal Practice §34.14[5] (3d ed. 2017) ("A party producing documents will ordinarily not be put to the expense of making copies for the requesting party. Rule 34(b) merely requires that the responding party make documents available for inspection and copies." (footnotes omitted)). Accordingly, the Court will not require defendants to bear the copy costs of plaintiff's anticipated trial exhibits.[3]

### D. Motion to Compel re: Plaintiff's Second Request for Production Directed to Brennan [Doc. #51]

Plaintiff has served twelve requests for production ("RFP") directed to defendant Brennan; she has provided no responses or objections. See Doc. #51-2. After reviewing those requests and the allegations of plaintiff's complaint, as limited by the Initial Review Order, see Docs. #1, #7, the Court hereby orders as follows.

RFPs 1 and 2 seek the production of documents relating to the identification of individuals responsible for "emptying and retrieving the contents of the 'medical mailboxes' at Corrigan" as well as the "processing" of the materials therein. See Doc.

---

[3] Prior to trial, counsel for defendants and plaintiff shall confer about their anticipated exhibits. Plaintiff may avoid the need to produce copies of his exhibits to the extent any of his exhibits overlap with those of defendants.

#51-2 at 2-3. Plaintiff has failed to establish how those documents are relevant to his claims in this proceeding. Unlike the allegations in Harnage I, here there are no allegations that any of the defendants interfered with plaintiff's medications by "destroying and/or discarding refill requests[.]" See Harnage I, No. 16CV1543(AWT), Doc. #69, Second Amended Complaint at ¶25 (D. Conn. Dec. 22, 2017). Accordingly, the Court will not require defendant Brennan to respond to RFPs 1 and 2.

RFP 3 seeks the production of "any and all documents identifying the number of inmates, at Corrigan, between July 1, 2016, and August 1, 2017, who received medications three (3) times daily." Doc. #51-2 at 3. RFP 4 seeks the production of "any and all documents which identify the number(s) of inmate(s) who received prescription(s) dispensed at the 1pm to 2pm medication line, at Corrigan, between July 1, 2016, and August 1, 2017." Id. Plaintiff asserts that these requests "should be allowed" because "[t]he information is relevant to the central issues of this action and the investigation thereof." Doc. #51 at 2. Plaintiff does not, however, articulate how the information sought by these requests is reasonably calculated to lead to the discovery of admissible evidence. The number of inmates receiving medications at a particular time or at a particular dosage is not relevant to the claims of the complaint. Plaintiff does not allege that he was deprived of

medication dosages that were provided to other inmates. To the contrary, the allegations of the complaint appear to challenge a Department of Correction-wide policy regarding the dosage of medication. <u>See, e.g.</u>, Doc. #1, Complaint at ¶17 ("Defendant Wu, in an attempt to save money, has instituted a policy instructing staff to minimize costs by any means including the unreasonable and arbitrary elimination of mid-day doses of necessary medications, reducing plaintiff from 3 times per day down to 2 times per day without any care of concern for the adverse affects on inmates, like Harnage." (sic)). Accordingly, plaintiff has not sustained his burden of establishing the relevance of the information sought in RFPs 3 and 4. Therefore, the Court will not require defendant Brennan to respond to those requests.

RFPs 5, 6, 7, 8b, 9, 10, 11, and 12 each seek the production of documents that identify the number of inmates who were prescribed a specific medication at Corrigan between the dates of July 1, 2016, and August 1, 2017. <u>See</u> Doc. #51-2 at 3-4. Plaintiff again asserts that these requests "should be allowed" because "[t]he information is relevant to the central issues of this action and the investigation thereof." Doc. #51 at 3-4. Plaintiff does not, however, articulate how the information sought in these requests is reasonably calculated to lead to the discovery of admissible evidence. The number of

inmates receiving a specific medication is not relevant to the claims of the complaint as plaintiff does not allege that he was deprived certain medications that were provided to other inmates. To the contrary, the allegations of the complaint appear to challenge a Department of Correction-wide policy regarding the dosage and nature of prescription medications. See, e.g., Doc. #1, Complaint at ¶17, ¶36; see also Doc. #7 at 7 ("The plaintiff alleges that his medications were denied, delayed or provided in amounts that contravene the recommended dosage solely for budgetary reasons."). Accordingly, plaintiff has not sustained his burden of establishing the relevance of the information sought in RFPs 5, 6, 7, 8b, 9, 10, 11, and 12. Therefore, the Court will not require defendant Brennan to respond to those requests.

RFP 8a requests defendant Brennan to: "Produce and identify a complete list of and other such documents regarding 'Non-Formulary' prescriptions prohibited by either CMHC or the URC." Doc. #51-2 at 4. "Rule 34 only requires a party to produce documents that exist at the time of the request; a party cannot be compelled to create a document for its production." Williams v. City of Hartford, No. 3:15CV00933(AWT)(SALM), 2016 WL 1732719, at *17 (D. Conn. May 2, 2016), adhered to in part on reconsideration, No. 3:15CV00933(AWT), 2016 WL 3102001 (D. Conn. June 2, 2016). Accordingly, to the extent plaintiff seeks an

order compelling defendant Brennan to create a list of prohibited non-formulary prescriptions, that request is denied. However, in <u>Harnage I</u> the Court ordered defendants to "produce, for the time period of September 2013 through July 2016, all DOC and CMHC policies regarding prescriptions, formularies, and the determinations as to which medications, both prescription and non-prescription, should be ordered." <u>See</u> <u>Harnage I</u>, No. 16CV1543(AWT), slip op., Doc. #141 at 10 (D. Conn. May 7, 2018). Because this matter involves the time period of July 2016 through June 15, 2017, the Court will require defendant Brennan to produce those same documents but for the time period of August 2016 through June 2017.[4] Defendant Brennan shall produce those documents on or before **September 28, 2018.**

   Thus, for the reasons stated, plaintiff's "Motion To Compel Responses To And For Sanctions For Failure To Comply With Discovery Re: Plaintiff's Second Request For Production Directed To Brennan" (sic) [**Doc. #51**] is **GRANTED, in part, and DENIED, in part.** Plaintiff's request for monetary sanctions is **DENIED.**

---

[4] Plaintiff was housed at Corrigan from July 29, 2016, to at the latest, June 15, 2017. The Court will limit the temporal scope of plaintiff's requests accordingly.

**E. Motion to Compel re: Plaintiff's First Request for Production Directed to Brennan, Dr. Wu and Nurse Laura [Doc. #53]**

Plaintiff has served sixteen RFPs directed to defendants Brennan, Dr. Wu, and Nurse Laura; defendants have provided no responses or objections. See Doc. #53-2. After reviewing those requests and the allegations of plaintiff's complaint, as limited by the Initial Review Order, see Docs. #1, #7, the Court hereby orders as follows.

RFPs 1 and 2 seek the production of plaintiff's medical records, including all "Electronically Stored and/or Generated medical records and documents relating to the plaintiff[.]" Doc. #53-2 at 6 (sic). In Harnage I, defense counsel here, who also represents defendants in Harnage I, represented that plaintiff had received a full copy of his medical records and that counsel would request all of plaintiff's electronically stored medical records. See Harnage I, No. 16CV1543(AWT), slip op., Doc. #141 at 9-10 (D. Conn. May 7, 2018). In that matter the Court further ordered defendants to "produce all URC requests and responses that relate to plaintiff, including any emails related to those requests and responses for the time period of September 2013 through July 2016." Id. at 10. Similar production is warranted here. Accordingly, in response to RFP 2, and in light of the timeframe of this complaint's allegations, defendants shall produce all URC requests and responses that relate to plaintiff,

including any emails related to those requests and responses for the time period of August 2016 through June 2017. The Court will require no further response to RFPs 1 and 2 from defendants.

RFP 3 seeks: "All Utilization Review Committee (URC) requests, denials, mandates, directives, operational standards, policies, medication purchasing agreements, line-by-line budgetary expenditures for the Correctional Managed Healthcare (CMHC) from 2012-2017." Doc. #53-2 at 2. RFP 3 is temporally overbroad because the complaint's allegations relate only to the time period of late July 2016 through June of 2017. RFP 3 is also substantively overbroad. Nevertheless, defendants shall produce, for the time period of August 2016 through June 2017, all DOC and CMHC policies relating to URC operating policies and guidelines.[5]

RFP 4 seeks: "All URC hearing notes, logs and transcripts." Doc. #53-2 at 6. RFP 4 is overbroad and implicates a broad swath of information that is not relevant to the claims in the complaint. Additionally, the information sought could likely implicate confidential third party medical information. Accordingly, the Court will not require defendants to respond to RFP 4.

_____

[5] The Court previously ordered the production of these documents for the time period of September 2013 through July 2016 in Harnage I, No. 16CV1543(AWT), Doc. #141, slip. op. at 10 (D. Conn. May 7, 2018).

RFP 5 requests: "All purchase orders, purchasing agreements, purchasing contracts and per unit cost analysis for: [Flunisolide; Flonase; Gabapentin; Ibuprofen; Psyllium Fiber; Calcium Carbonate; Clobatasol Propionate; and Temovate.]" Doc. #53-2 at 6-7. RFP 5 is overbroad as it is not temporally limited in scope. As to RFP 5, defendants shall produce, for the time period of July 2016 through June 2017, any documents reflecting the costs to CMHC or the DOC for the following medications: Flunisolide; Flonase; Gabapentin; Ibuprofen; Psyllium Fiber; Calcium Carbonate; Clobatasol Propionate; and Temovate.

RFP 6 requests defendants to: "Produce all manufacturers recommended dosage, usage and side effects for each of the medications described in #5 above." Doc. #53-2 at 7. To the extent such documents are in defendants' custody and control, defendants shall produce, for each of the medications identified in RFP 5, the drug manufacturer's recommendations in effect from July 2016 to June 2017.

RFP 7 requests defendants to produce "any and all documents relied upon in response to any of the interrogatory or deposition responses to questions propounded by the plaintiff to any of the defendants." The Court will require only defendant Dr. Wu to respond to this request as to his previous

interrogatory responses.[6] See <u>Ruran v. Beth El Temple of W.</u>
<u>Hartford, Inc.</u>, 226 F.R.D. 165, 168 (D. Conn. 2005)
("Certainly, documents identified and relied upon in answering
the interrogatories are relevant and not so overly broad as to
preclude production."); <u>Charter Practices Int'l, LLC v. Robb</u>,
No. 3:12CV1768(RNC)(DFM), 2014 WL 273855, at *4 (D. Conn. Jan.
23, 2014) ("Request for production 18 seeks documents the
defendant relied on in responding to the interrogatories. The
defendant objects on the grounds that the request is overbroad
and unduly burdensome. The objections are not well-founded and
are overruled. This is an unexceptional discovery request.").

RFP 8 seeks the production of "any and all documents and
tangible items identified in any of the responses to
interrogatory and deposition questions propounded to either of
the defendants." Doc. #53-2 at 7. The Court will likewise
require only Dr. Wu to respond to this request as to his
previous interrogatory responses. See <u>Ruran</u>, 226 F.R.D. at 168.

RFP 9 requests defendants to:

> Produce any and all Memorandum, Notices, orders or
> postings issued by CMHC, URC, Dr. Wu or any other agent
> of either, acting in the interests of either or under
> the orders thereof; during the period beginning August,
> 2012 through the date of any responses hereto, to any

---

[6] The record before the Court suggests that only Dr. Wu has
responded to interrogatories issued by plaintiff. See Docs. #44,
#50, #57, #67. There is nothing to suggest that plaintiff has
propounded either written or oral deposition questions to any
defendant. Discovery is closed.

medical staff at either the MacDougall Correctional
Institute (MacDougall) and/or Corrigan Correctional
Institute (Corrigan); regarding the issuance,
prescription or treatment of inmates, the discontinuance
of any usage of any medications and the discontinuance
of the distribution of medications three (3) times per
day, to only twice per day.

Doc. #53-2 at 7. RFP 9 is overbroad and seeks information that
is not relevant to the claims of this lawsuit. First, the
allegations of plaintiff's complaint relate only to his time
while incarcerated at Corrigan, not MacDougall. See generally
Doc. #1, Complaint. Second, the time period implicated by the
allegations of plaintiff's complaint is July 2016 to June 2017.
See generally id. The Court has already ordered defendant
Brennan to produce for the time period of August 2016 through
June 2017, all DOC and CMHC policies regarding prescriptions,
formularies, and the determinations as to which medications,
both prescription and non-prescription, should be ordered. See
Section II.D., supra. Defendants shall produce for the time
period of July 2016 through June 2017, all DOC and CMHC policies
regarding the distribution of prescription medications.

RFP 10 requests defendants to: "Produce any and all copies
of any releases of information from the medical records of James
A. Harnage from August 2012 through the date of responses
hereto, to any and all third parties." Doc. #53-2 at 8. The
Court will not require defendants to respond to this request as
plaintiff has not established how it is relevant to his claims.

Additionally, this request appears duplicative of other requests, as any medical releases should be contained in plaintiff's medical records.

RFP 11 seeks: "The most recent identification photographs taken by either CMHC and/or Department of Correction, of each staff member at MacDougall and Corrigan from August, 2012 through the date of response hereto." Doc. #53-2 at 8. RFP 11 is overbroad and seeks information that is not relevant to the claims set forth in the complaint. Presumably, by requesting this information plaintiff seeks to identify the Doe defendants named in the complaint. The Initial Review Order issued on October 18, 2016, noted: "The plaintiff is directed to obtain these names [of the Doe defendants] through discovery and file an amended complaint alleging how each defendants was deliberately indifferent to the plaintiff's medical needs[.]" Doc. #7 at 9. Plaintiff served his discovery requests seeking this information in April of 2017, and "re-mailed" those requests to defendants in December 2017. Notably, plaintiff did not move to compel responses to those requests until May of 2018. The Court will not require defendants to respond to RFP 11 as the identification of the Doe defendants would be futile given that it is well past the time period allowed to serve additional defendants. See Fed. R. Civ. P. 4(m); <u>Romagnano v. Town of Colchester</u>, 354 F. Supp. 2d 129, 133-34 (D. Conn. 2004)

(dismissing Doe defendants where plaintiff failed to ascertain their identity and did not serve them within the time requirements of Rule 4(m)); <u>Mosley v. Woodly</u>, No. 11CV1490(DNH), 2013 WL 5347272, at *3 (N.D.N.Y. Sept. 23, 2013 (dismissing Doe defendant because plaintiff had failed to ascertain his identity and serve him with the time period allowed under the Federal Rules of Civil Procedure).[7]

RFP 12 seeks: "Any and all statements of witnesses to any event identified in the complaint or of any defense being offered to the complaint herein." Doc. #53-2 at 8. RFP 12 is overbroad as framed. Instead, defendants shall produce, if in their custody or control, any "witness statements" regarding the events alleged in paragraphs 24, 30, 42, 50-51, 53-54, and 58 of the complaint, or regarding any defense to the allegations of plaintiff's complaint.

RFP 13 seeks: "Any and all police records, police reports, Critical Incident Reports (CIR), case incident reports, internal affairs records, Detective Bureau records, concerning any

---

[7] This case has been pending for almost two years. Discovery has closed and this matter is, for all intents and purposes, trial ready. Adding up to five additional defendants at this late stage would not only prejudice defendants, but could severely delay the resolution of this matter. Even if plaintiff was able to identify the Doe defendants by way of their staff photographs, the Court is not optimistic that the Court would permit plaintiff to amend his complaint at this late stage.

defendants, any anticipated witnesses proffered by defendants or
the subject matter of this lawsuit." RFP 13 is overbroad and
seeks irrelevant information. Defendants shall produce
plaintiff's entire DOC file for the year 2017, to the extent
that document is in defendants' custody and control. The Court
will permit redactions to that document for legitimate safety
and security concerns.[8]

RFPs 14 and 15, seek, respectively:

14. Any and all police records or Department of
Correction records concerning any internal disciplinary
procedures, regardless of the outcome, to which any of
the defendants have been subjected while employed by
Correctional Managed Healthcare, Department of
Correction or University of Connecticut Medical Center,
to include any records, without limitations, of either,
relating thereto.

15. Any and all records, reports, letters, memoranda,
exhibits, photographs, etc..., concerning any internal
investigation by the Police, Department of Correction,
CMHC or University of Connecticut Medical Center, of the
subject matter of this lawsuit.

Doc. #53-2 at 8. RFPs 14 and 15 are overbroad as framed. RFP 15
also potentially implicates privileged attorney-client or
protected work product documents. The Court declines to reframe
these requests for plaintiff. Accordingly, the Court will not
require defendants to respond to RFPs 14 and 15.

---

[8] The Court previously ordered the production of plaintiff's
entire DOC file for the years 2012 through 2016 in Harnage v.
Pillai, No. 17CV355(AWT), slip op., Doc. #39 at 12 (D. Conn.
June 1, 2018). Thus, the Court finds it appropriate to limit the
production in this instance to plaintiff's DOC file for 2017.

RFP 16 requests defendants to produce "[a]ny and all records relating to employee bonuses, incentives, pharmaceutical rebates, or other such financial statements and disclosures resulting from the preferred use or prescription of drug manufacturers recommended medications or CMHC usage and incentive programs." Doc. #53-2 at 16. RFP 16 is overbroad. It is also not clear in light of the complaint's allegations how this request is relevant to plaintiff's claims or proportional to the needs of the case. Indeed, plaintiff alleges that the DOC discontinued or limited the dosage of certain medications as a cost-saving measure. See generally Doc. #1, Complaint at ¶¶17, 36-37. Plaintiff does not allege that any defendant received a kickback or any other incentive for prescribing certain medications.[9] Accordingly, the Court will not require defendants to respond to RFP 16.

Thus, for the reasons stated, the Court **GRANTS, in part, and DENIES, in part**, plaintiff's "Motion To Compel Responses To And For Sanctions for Failure To Comply With Discovery Re: Plaintiff's First Request Tor Production Directed To Janine Brennan, Dr. Wu, and Nurse Laura" (sic) [**Doc. #53**]. Defendants

---

[9] Plaintiff "believes and thereby alleges the defendants actions are designed to save money, for personal monetary gains[.]" Doc. #1, Complaint at ¶37 (sic). That one vague allegation is not enough to compel the production of the type of discovery requested in RFP 16.

shall respond to plaintiff's RFPs, as limited above, on or before **September 28, 2018**. Plaintiff's request for monetary sanctions is **DENIED**.

### III. <u>Joint Trial Memorandum</u>

Finally, on April 9, 2018, Judge Thompson issued a Trial Memorandum Order, which required the parties to file their joint trial memorandum by May 9, 2018. [Doc. #43] To date, no such trial memorandum has been filed. Accordingly, the parties are hereby **ORDERED** to file their joint trial memorandum, in compliance with Judge Thompson's April 9, 2018, order, on or before the close of business on **November 2, 2018**.

**The Court will accept no further discovery briefing. <u>Discovery is closed.</u>**

### IV. <u>Conclusion</u>

For the reasons stated above, the Court **GRANTS, in part, and DENIES, in part**, plaintiff's motions to compel [**Docs. #51, #53**].

This is not a Recommended Ruling. This is an order regarding discovery which is reviewable pursuant to the "clearly erroneous" statutory standard of review. <u>See</u> 28 U.S.C. §636(b)(1)(A); Fed. R. Civ. P. 72(a); and D. Conn. L. Civ. R. 72.2. As such, it is an order of the Court unless reversed or modified by the district judge upon motion timely made.

SO ORDERED at New Haven, Connecticut, this 30th day of August, 2018.

/s/
_____
HON. SARAH A. L. MERRIAM
UNITED STATES MAGISTRATE JUDGE
